THOMAS J. BRUNING, APPELLANT, V. LAW OFFICES OF RONALD J. PALAGI, P.C., ET AL., APPELLEES.

551 N.W.2d 266

Filed July 26, 1996.   No. S-94-417.

Lee R. Terry, of Terry & Kratville, for appellant.

Steven H. Howard for appellee Law Offices of Ronald J. Palagi, P.C.

Dean F. Suing and David A. Castello, of Katskee, Henatsch & Suing, for appellee Scot Bonnesen.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

GERRARD, J.

Thomas J. Bruning commenced this legal malpractice action, asserting that the defendants-appellees, Ronald J. Palagi, individually; Scot Bonnesen, individually; and the Law Offices of Ronald J. Palagi, P.C., were negligent in recommending a workers' compensation settlement without conducting an adequate investigation to properly evaluate the claim and, in fact, recommending that Bruning accept an inadequate settlement. The district court granted summary judgment in

favor of the defendants on grounds that Bruning's acceptance of a workers' compensation settlement and the execution of a release in connection therewith barred a subsequent professional negligence action against his attorneys. This appeal followed. We conclude that the professional negligence action is not barred by the settlement or release, and because there exist genuine issues of material fact as to whether the defendants acted in a negligent manner, we reverse, and remand for further proceedings.

## FACTUAL BACKGROUND

At all pertinent times, Bruning was employed as a sod laborer for O'Dell Turf & Ties and had been in this position since graduation from high school in 1977. On June 11, 1990, Bruning was involved in a motor vehicle accident while riding as a passenger in his employer's sodding truck. Bruning received injuries to his head, neck, shoulder, and back, which injuries required hospitalization and treatments from a neurologist, an orthopedic surgeon, a plastic surgeon, and a chiropractor.

*Workers' Compensation Claim and Settlement.*

Sometime in the early part of July 1990, Bruning contacted the Law Offices of Ronald J. Palagi for representation on a workers' compensation claim against O'Dell Turf & Ties and its insurance carrier. Bruning testified by deposition that his initial meeting was with attorney Palagi. Bruning claims that he was not provided with a description of his rights under the Nebraska Workers' Compensation Act at the initial meeting. Later in July, attorney Bonnesen, an associate of Palagi, began meeting with Bruning and thereafter handled his claim through settlement.

In November 1990, Bruning was contacted by and visited with a nurse from Rehabilitation Professionals, Inc., who, along with Dr. Michael Morrison, an orthopedic surgeon who treated Bruning, recommended a functional capacity evaluation and a "work hardening" program. Bruning attempted unsuccessfully to complete the functional capacity evaluation and attended the work hardening program for 2 weeks before he quit the program. Bruning was again contacted by a nurse

from Rehabilitation Professionals in March 1991 about the possibility of further rehabilitation services. The nurse claimed that Bruning was not interested in rehabilitation services at that time and, in fact, told her that he "could find [his] own job." Bruning denies making such a statement.

As part of the preparation of this case, Bonnesen received a March 19, 1991, opinion letter from Dr. Edward Schima, a neurologist who treated Bruning, which (1) stated that Bruning suffered a 5-percent permanent physical impairment and (2) restricted Bruning from lifting more than 20 pounds or standing for more than 15 minutes without altering his position. Dr. Schima's letter further noted that Bruning could not flex his body more than 20 degrees and that he was not capable of stooping or bending.

The evidence is in conflict regarding the timing and nature of settlement negotiations. Bonnesen authored a letter to Bruning on April 10, 1991, which stated, in pertinent part, the following:

> This letter is to confirm that you have instructed me to settle your workers' compensation claim for . . . your injury for the total lump sum amount of $5,000. . . .

> You have been advised that this is a full, final, and complete settlement and you can make no further claims against the workers' compensation insurance carrier.

> This letter confirms that we have advised and you understand that pursuant to the Nebraska Workers' Compensation Laws you may be entitled to vocational rehabilitation. You do not desire vocational rehabilitation and are waiving any rights thereto by accepting this lump sum settlement.

> . . . .

> If this is not your understanding, please contact me immediately.

(Emphasis in original.) Bruning testified that he did not specifically recall receiving the April 10 letter, but that he did eventually authorize settlement based on counsel's advice and the understanding that this was "all he could get."

Bruning testified that he went to Bonnesen's office on May 10, 1991, to review and sign the lump-sum settlement docu-

ments. Bruning was advised that the 5-percent whole body impairment rating was multiplied by his weekly disability payment and the number of weeks left for payment on the workers' compensation schedule as a basis for the lump-sum settlement amount. Bruning also stated that Bonnesen mentioned a right to vocational rehabilitation, but there was no explanation of what those vocational rehabilitation rights might entail. In the settlement documents, in addition to the $5,000 lump-sum payment, Bruning acknowledged payment of $11,887.14 in medical expenses and $8,200.41 in temporary total disability payments. As part of completing the application for approval of the lump-sum settlement, Bruning filled out and signed a deposition by interrogatories. The interrogatories contained the following questions and responses that were originally answered "NO" in Bruning's handwriting:

22. Do you understand that if this settlement is approved by the above-mentioned court and the payment of $5,000.00 is made as ordered by the court, that it will be a full and final settlement of any and all claims which you now or may in the future have against the defendants by reason of said accident and injuries of 6/11/90?

ANSWER: NO YES[.]

23. Do you understand that after this settlement is approved you will not be able to receive any further payments for compensation benefits, temporary or permanent disability, medical or hospital expense, damages or claims of any kind which you have by reason of the accident and injuries sustained by you on 6/11/90?

ANSWER: NO YES[.]

24. Do you understand that this is true even though your condition may become worse in the future?

ANSWER: NO YES[.]

25. Do you understand that if you should need further medical treatment in the future as a result of the injuries sustained on 6/11/90, you will have to pay for such medical treatment yourself?

ANSWER: NO YES[.]

Bruning testified that he discussed the above interrogatories and his responses with Bonnesen. Bruning claimed that

Bonnesen told him that in order to have the settlement approved, he had to change the responses from "NO" to "YES." Without further explanation or inquiry, Bruning crossed out the "NO" responses and entered handwritten "YES" responses to the interrogatories.

Bonnesen also received a May 17, 1991, opinion letter from Dr. Morrison. Dr. Morrison opined that Bruning suffered a herniated lumbar disk as well as cervical and lumbar strain injuries which were all permanent in nature, resulting in a permanent impairment rating of 5 percent to the whole body. Additionally, Dr. Morrison restricted Bruning from lifting more than 30 pounds, walking more than 2 to 4 hours at a time, sitting for more than 2 hours at a time, squatting for more than 1 to 2 hours at a time, and crawling for more than 1 to 2 hours at a time. Based on these restrictions, Dr. Morrison stated that Bruning should not return to his former job as a sod laborer.

The application for approval of the final lump-sum settlement was submitted to the Workers' Compensation Court in May 1991, along with an accompanying release of claims and the deposition by interrogatories. The release purported to release "O'Dell Turf & Ties . . . and [its] officers, agents . . . and all persons, firms and other corporations of and from any and all actions . . . which . . . may arise in [Bruning's] favor on account of an alleged accident . . . ." Both the release and the application for the lump-sum settlement signed by Bruning expressly provided that Bruning knowingly waived his right to vocational rehabilitation and understood that, as a result of the settlement, he had no further remedy in regard to his injuries. The settlement was approved by the Workers' Compensation Court on June 6 and by the district court on June 28.

*Professional Negligence Action and Summary Judgment.*

Subsequently, Bruning incurred further medical expenses related to his injuries. On June 7, 1993, Bruning commenced this professional negligence action, asserting that the defendants were negligent in (1) obtaining a settlement that was inadequate, (2) settling without information necessary to prop-

erly evaluate the claim, (3) failing to secure the opinion of a vocational rehabilitation expert concerning earning capacity, and (4) failing to secure vocational rehabilitation for Bruning. In separate answers, Palagi and his law offices, as well as Bonnesen, defended on the basis of the release signed by Bruning, the statute of limitations for professional negligence actions, and that the damages, if any, were caused by third parties over whom the defendants had no control.

The parties obtained deposition testimony of Bruning's expert witness, Ronald Brown. At the time of his deposition, Brown was an attorney in private practice in Omaha, Nebraska, who had extensive experience in workers' compensation litigation. An affidavit received in evidence reveals that Brown has since been appointed to a judgeship on the Workers' Compensation Court.

Brown testified that prior to the date of the deposition, he interviewed Bruning, reviewed Bruning's entire file from the Workers' Compensation Court, and reviewed copies of documents from Palagi's office file. Brown testified in detail regarding the applicable standard of care in this workers' compensation case and the particulars, in his opinion, of the breach of the standard of care. Brown testified that the medical evidence revealed Bruning had a whole body injury as a result of the motor vehicle accident. Given the fact that both Drs. Schima and Morrison had assessed a 5-percent impairment of the whole body; placed several restrictions regarding lifting, bending, sitting, and stooping; and advised Bruning against returning to work as a sod laborer, it was Brown's opinion that the underlying case should not have been settled strictly on the basis of the whole body impairment rating.

Further, Brown noted that the medical records indicate that Bruning had a head injury of some degree as a result of the collision. There were indications in the medical records that Bruning experienced a loss of consciousness, that he had some memory difficulties, and that there was some "functional overlay" involved with his complaints. It was Brown's opinion that the indication of head injury or functional overlay should have been further evaluated and that after those inquiries were made, a vocational evaluation was in order to determine the

loss of earning capacity in this case. Brown's testimony will be discussed more extensively in the analysis portion of this opinion.

The defendants filed motions for summary judgment, asserting that there existed no genuine issue of material fact and that they were entitled to judgment as a matter of law. At the hearing on the motions for summary judgment, the defendants offered the deposition of Bruning; the deposition of Brown, Bruning's expert witness; the application for approval of the final lump-sum settlement; and the deposition by interrogatories.

In opposition, Bruning offered the medical report of Dr. Morrison, which opined that Bruning could not return to work as a sod laborer, and joined in offering the Brown and Bruning depositions. The motions for summary judgment were taken under advisement, and on April 12, 1994, the district court entered judgment in favor of the defendants and dismissed Bruning's petition.

## ASSIGNMENT OF ERROR

Bruning asserts that the district court erred in finding that no genuine issue of material fact exists and that the defendants are entitled to judgment as a matter of law.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Hand v. Starr, ante* p. 377, 550 N.W.2d 646 (1996). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Boyd v. Chakraborty, ante* p. 575, 550 N.W.2d 44 (1996); *Kocsis v. Harrison,* 249 Neb. 274, 543 N.W.2d 164 (1996).

## ANALYSIS

An attorney " ' " 'impliedly agrees to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake. . . .' " [Citations omitted.]' " *McVaney v. Baird, Holm, McEachen*, 237 Neb. 451, 460-61, 466 N.W.2d 499, 507 (1991) (quoting *Stansbery v. Schroeder*, 226 Neb. 492, 412 N.W.2d 447 (1987)).

The defendants contend that they were entitled to judgment as a matter of law because the execution of the release and settlement by Bruning in the underlying workers' compensation action bars the present professional negligence action for inadequate settlement. However, in the recent case of *McWhirt v. Heavey, ante* p. 536, 550 N.W.2d 327 (1996), we held that a client who has agreed to the settlement of an action is not barred from recovering against his or her attorney for malpractice if the client can establish that the settlement agreement was the product of the attorney's negligence. Thus, the issue in this case is not whether the release and settlement in the underlying workers' compensation case bars the present action. We must decide if genuine issues of material fact exist in determining whether the settlement agreement was the product of attorney negligence. With that in mind, we analyze the evidence in a light most favorable to Bruning, as the law requires.

The defendants first assert that by virtue of the settlement, Bruning was aware that he waived all rights to vocational rehabilitation and additional compensation and that Bruning should be bound by these terms. While Bruning may have signed settlement documents that purport to waive vocational rehabilitation rights and additional compensation, the question that begs to be answered is whether Bruning was ever adequately advised of the nature of those rights and the potential compensation that he was waiving.

The defendants claim the written documents reveal that Bruning was advised of his rights to vocational rehabilitation and that Bruning was offered the services of a rehabilitation nurse. In his deposition, Brown testified that Bruning had been offered, and accepted, a functional capacity evaluation.

However, Brown testified that he told Bruning " 'a functional capacity evaluation and evaluation by a vocational counselor or evaluator are two different things.' " Bruning told Brown that no one had talked to him about the concept of loss of earning capacity prior to entering into the settlement. Brown also testified that he did not see in the correspondence file that there were letters or proposals to the insurance carrier indicating that the claim should be settled on the basis of permanent total disability or loss of earning capacity.

The defendants next assert that Bruning insisted upon a lump-sum settlement after being advised of his rights under the Nebraska Workers' Compensation Act. In this context, Brown was asked about the standard of care for settlement of workers' compensation cases, and the following colloquy occurred:

> Q. What is the standard of care for a plaintiff's attorney in a workers' compensation claim where the claimant insists upon accepting the settlement proposal from the defendants?

> A. If the claimant insists that he wants the money, then I think you have to sit down with your client and explain the alternatives to him.

> [If] Bruning told me . . . at the time he settled the claim, he was not working, and he could not work . . . or . . . perform any type of employment in which he had prior training or experience, and in that case I think that you have to tell him that he may have a claim for permanent total disability.

> He may be entitled to receive some kind of job training that would enable him to return to sedentary to light duty employment, and it may only pay $5 an hour, but all the same, he may be entitled to that additional training that is going to permit him to return to work within the physical restrictions that the doctor has recommended.

> And if he still insists, knowing those things, the other factor you have to talk to him about is future medical and advise him that if the doctors are discussing with him that there is a good chance that future medical treatment

may be necessary, that it may be to his advantage to take the money on a weekly basis in order to leave the med pay open.

. . . .

Q. What if he swears under oath that he understands all those things?

A. If he swears under oath that he understood all those things and that . . . he was counseled in that manner, then I think that you're obligated to settle his claim.

Q. Isn't that what he did when he signed the lump sum settlement application?

A. He . . . told me that he didn't understand it, okay, and I would agree with you. If he said that he went through that lump sum settlement agreement and he fully understood what it meant and he signed it, it's a verified application, then he has entered into a full and final settlement of all claims regarding his job-related injury.

And believe me, if Tom Bruning had told me that he fully understood that application *and that he had been counseled in the manner we just discussed*, I wouldn't be sitting here.

(Emphasis supplied.)

Brown also testified that he could not think of one instance in which he counseled a client to accept a lump-sum settlement when the client was neither employed nor involved in a vocational rehabilitation program at the time of the settlement. Both Bonnesen and Bruning signed and submitted for court approval an application for a lump-sum settlement. which stated, "[P]laintiff feels capable of returning to work for which he has previous experience or training . . . ." Bonnesen knew that Bruning was not involved in a vocational rehabilitation program. Bonnesen also knew that Bruning's physician advised him not to return to the only job for which he has previous experience or training, i.e., sod laborer. Bruning testified that he was not able to return to work at the time of the settlement, but he signed the application in order to receive the settlement money.

The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must

produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Boyd v. Chakraborty, ante* p. 575, 550 N.W.2d 44 (1996). After the moving party has shown facts entitling it to a judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents judgment as a matter of law for the moving party. *Id.; Zion Wheel Baptist Church v. Herzog*, 249 Neb. 352, 543 N.W.2d 445 (1996).

We conclude that Bruning presented expert testimony that at least establishes an issue of material fact regarding the standard of care that lawyers of ordinary skill and capacity exercise in like circumstances and whether there has been a breach of the standard of care in this case. Brown testified that, in his opinion, the standard of care had been breached in that (1) the functional overlay problem should have been investigated, and a vocational evaluation should have been performed to determine loss of earning capacity; (2) the case should have been evaluated and presented as a permanent total disability claim; (3) prior to considering settlement, Bruning should have been fully advised of his right to receive the type of vocational training that might permit him to return to employment within the doctors' physical restrictions; and (4) prior to considering settlement, Bruning should have been advised of his right to payment for future medical treatments and the advantage of leaving the medical pay provision open if future medical treatment was likely. On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *Boyd v. Chakraborty, supra; Kocsis v. Harrison*, 249 Neb. 274, 543 N.W.2d 164 (1996).

While this court continues to support the implementation of policies and procedures that encourage fair and amicable pretrial settlements, we declined in *McWhirt v. Heavey, ante* p. 536, 550 N.W.2d 327 (1996), to adopt a rule that insulates an attorney from exposure to malpractice claims arising from his or her negligence in settled cases if the attorney's conduct has damaged the client. In coming to that conclusion, we recognized that litigants rely heavily on the professional advice of

counsel when they decide whether to accept or reject offers of settlement, and we insist that lawyers of our state advise clients with respect to settlements with the same skill, knowledge, and diligence with which they pursue all other legal tasks. *Id.* (citing *Grayson v. Wofsey, Rosen, Kweskin*, 231 Conn. 168, 646 A.2d 195 (1994)).

Finally, the defendants assert that a court-approved settlement agreement cannot form the basis for a legal malpractice claim. However, we conclude that no different result is required, because the lump-sum settlement agreement was approved by the Workers' Compensation Court and, subsequently, a district court. At the time that this action arose, Neb. Rev. Stat. § 48-139 (Reissue 1988) provided that a workers' compensation lump-sum settlement was to be approved by both the compensation court and a district court judge. If both the compensation court and the district court judge found that such settlement was made in conformity with the compensation schedule and for the best interests of the employee or his or her dependents under all the circumstances, the district court was to enter an order approving same. However, in determining whether the proposed settlement meets the statutory requirement of being "for the best interests of the employee," the district court judge had discretion to request the production of evidence on such issue, but had no affirmative duty to make such a request.

In *McWhirt v. Heavey, ante* at 547, 550 N.W.2d at 335, this court stated: " 'It is the duty of the parties and their counsel to produce evidence on the issues before the court, and to place this duty on the trial judge would overstep the bounds of judicial propriety.' " (Quoting *Buker v. Buker*, 205 Neb. 571, 288 N.W.2d 732 (1980).) This is particularly true when the parties misrepresent a factor that is crucial to both the compensation court's and the district court's approval of a lump-sum settlement agreement, i.e., Bruning is capable of returning to work for which he has previous experience or training. Neither the district court's nor the compensation court's general inquiry pursuant to § 48-139 shall serve as a substitute for the diligent investigation and preparation for which counsel is responsible. See *McWhirt v. Heavey, supra.*

As a procedural equivalent to a trial, summary judgment is an extreme remedy which should be used sparingly because it may dispose of a crucial question in litigation, or the litigation itself, and may thereby deny a trial to the party against whom the motion is directed. *Oliver v. Clark*, 248 Neb. 631, 537 N.W.2d 635 (1995). Having determined that there are genuine issues of material fact regarding the standard of care and whether there has been a breach in the standard of care in this case, we conclude that the district court erred in granting the defendants' motions for summary judgment.

## CONCLUSION

The judgment of the district court is thus reversed, and the cause remanded to the district court for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.