BEVERLY J. WOOD, APPELLANT, V.
MCGRATH, NORTH, MULLIN & KRATZ, P.C., APPELLEE.
589 N.W. 2d 103

Filed February 12, 1999. No. S-96-1243.

David Geier, of Healey & Wieland Law Firm, for appellant.

John R. Douglas and Terry J. Grennan, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, and McCORMACK, JJ.

CONNOLLY, J.

We granted the appellant, Beverly J. Wood's petition for further review of the Nebraska Court of Appeals' decision. The Court of Appeals concluded that as a matter of law, Timothy J. Pugh, an attorney with the appellee, the law firm of McGrath, North, Mullin & Kratz, P.C. (McGrath), did not breach the standard of care or commit legal malpractice by failing to inform Wood that the law relating to two issues relevant to a divorce settlement was unsettled and that the settlement resolved those issues against her. We reverse the Court of Appeals' decision and conclude that the doctrine of judgmental immunity does not apply to an attorney's failure to inform a client of unsettled legal issues relevant to a settlement agreement.

## BACKGROUND

We set out the facts focusing on the issues raised in Wood's petition for further review. For a more detailed recitation of the facts, see *Wood v. McGrath, North*, 7 Neb. App. 262, 581 N.W.2d 107 (1998).

Wood brought a legal malpractice action against McGrath, alleging that Pugh had negligently represented her in a dissolution action. The underlying dissolution action was concluded by settlement and decree. In her petition against McGrath, Wood alleged that Pugh allowed her to accept less than her share of the marital estate and was negligent by, inter alia, failing to inform her that (1) the settlement reflected a distribution which excluded all rights to then unvested stock options which her husband held through his employment at Werner Enterprises, Inc.; (2) the state of the law indicated that a trial court could likely include all such stock options within the marital estate; (3) the settlement reflected a distribution which excluded approximately $210,489 from the marital estate to account for potential capital gains tax on the stock that the couple owned; and (4) the state of the law indicated that a trial court could likely value the Werner stock without deducting any potential capital gains tax.

At trial, Wood testified that Pugh told her the settlement awarded her 40 percent of the marital estate and that when she asked if that was appropriate, she said Pugh told her a judge would award her anywhere from 35 to 50 percent—that she could do better or worse than the settlement by going to trial. However, Wood testified that Pugh never discussed the different terms of the settlement, never mentioned any alternatives to settling, never provided any reasons to reject the settlement, and never discussed the potential outcome of a trial. She stated that she would not have signed the agreement if Pugh had told her that a trial court might include the unvested stock options as part of the marital estate and that a trial court might prohibit the deduction of potential capital gains tax when valuing the stock, contrary to what the settlement proposed.

Two attorneys testified as expert witnesses for Wood. David Domina stated that when a property settlement raises the issue of unvested stock options, the decision is the client's whether to

pursue the issue to trial or to nonetheless settle the issue and that a lawyer breaches the applicable standard of care by failing to inform the client of the existence of the issue and the related law. Domina testified that when a settlement agreement deducts potential capital gains taxes from the value of a marital estate, a lawyer breaches the applicable standard of care by failing to inform a client of the effect of the deduction and the related law. Paul Galter testified that given the terms of the settlement agreement presented to Wood, Pugh breached the standard of care because Pugh did not give Wood sufficient information on the unvested stock options and capital gains tax issues. Galter stated that Pugh had a duty to tell Wood that the agreement raised the issues; to explain their effects to Wood; and to explain what the relevant law on the issues was, including what courts in other jurisdictions had held, before permitting her to sign the agreement.

At the close of Wood's evidence, McGrath moved for a directed verdict, which the court sustained on the issues of the stock valuation and the exclusion of unvested stock options.

On appeal, Wood asserted, inter alia, that the trial court erred in granting McGrath's directed verdict, arguing that Pugh breached the standard of care by failing to properly advise her in regard to the settlement agreement.

The Court of Appeals noted that the law on both the inclusion of unvested stock options in the marital estate and the consideration of potential capital gains taxes in valuing the estate were unsettled in Nebraska at the time the parties entered into the agreement. *Wood v. McGrath, North,* 7 Neb. App. 262, 581 N.W.2d 107 (1998). Accordingly, the court held that the judgmental immunity rule applied and concluded that Pugh's acts and omissions relating to the issues were not negligent as a matter of law. The court then stated that "Pugh, upon exercise of informed judgment, was not obligated to give additional advice regarding the unsettled nature of relevant legal principles." *Id.* at 282, 581 N.W.2d at 121.

## ASSIGNMENT OF ERROR

In her petition for further review, Wood asserts that the Court of Appeals erred in affirming the trial court's judgment.

## SCOPE OF REVIEW

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Hoiengs v. County of Adams*, 254 Neb. 64, 574 N.W.2d 498 (1998).

## ANALYSIS

Wood argues that the doctrine of judgmental immunity does not apply to Pugh's failure to inform her of the law relating to the unvested stock options and capital gains tax deduction issues; that the settlement resolved those issues against her; and that given the body of law on the issues at the time, a trial judge might have resolved those issues in her favor. McGrath notes that the law regarding those issues was unsettled in Nebraska when Pugh represented Wood and argues that the doctrine of judgmental immunity applies to an attorney's decision regarding unsettled law, citing *Baker v. Fabian, Thielen & Thielen*, 254 Neb. 697, 578 N.W.2d 446 (1998). McGrath thus contends that when presenting a client with a settlement, an attorney has no duty to inform a client of possible options when the law relating to a relevant issue is unsettled.

In *Baker, supra,* this court held that an attorney is not liable for an error in judgment on a point of law which has not been settled by this court and on which reasonable doubt may be entertained by well-informed lawyers. Thus, an attorney's judgment or recommendation on an unsettled point of law is immune from suit, and the attorney has no duty to accurately predict the future course of unsettled law. This immunity rule encourages practicing attorneys in this state to predict, in a professional manner, the outcome of legal issues relevant to their clients' cases. See Canon 7, EC 7-3 and 7-5, of the Code of Professional Responsibility. However, Pugh's recommendations (or lack thereof) on the unvested stock options and capital gains tax issues are not before us. Rather, the issue is whether the doctrine of judgmental immunity applies to Pugh's failure to inform Wood that the law relating to unvested stock options and potential capital gains tax issues, while unsettled in Nebraska, were settled in other jurisdictions in a manner which would have been favorable to Wood. The question of whether an attorney owes a duty to inform a client of the unsettled nature of rel-

evant law was not addressed in *Baker*. Thus, we must determine whether to extend the *Baker* judgmental immunity rule to an attorney's failure to inform a client of unsettled legal issues relevant to a settlement agreement.

"[W]e insist that lawyers . . . advise clients with respect to settlements with the same skill, knowledge, and diligence with which they pursue all other legal tasks." *Bruning v. Law Offices of Ronald J. Palagi*, 250 Neb. 677, 689, 551 N.W.2d 266, 272 (1996) (citing *Grayson v. Wofsey, Rosen, Kweskin & Kuriansky*, 231 Conn. 168, 646 A.2d 195 (1994)). See, also, *McWhirt v. Heavey*, 250 Neb. 536, 550 N.W.2d 327 (1996). We declined in *McWhirt v. Heavey*, 250 Neb. at 547, 550 N.W.2d at 335, " 'to adopt a rule that insulates attorneys from exposure to malpractice claims arising from their negligence in settled cases if the attorney's conduct has damaged the client.' " We decline to adopt such a rule now.

The decision to settle a controversy is the client's. See Canon 7, EC 7-7. If a client is to meaningfully make that decision, he or she needs to have the information necessary to assess the risks and benefits of either settling or proceeding to trial. "A lawyer should exert his or her best efforts to ensure that decisions of a client are made only after the client has been informed of relevant considerations." Canon 7, EC 7-8. The desire is that a client's decision to settle is an informed one.

> The attorney's research efforts may not resolve doubts or may lead to the conclusion that only hindsight or future judicial decisions will provide accurate answers. The attorney's responsibilities to the client may not be satisfied concerning a material issue simply by determining that a proposition is doubtful or by unilaterally deciding the issue. Where there are reasonable alternatives, the attorney should inform the client that the issue is uncertain, unsettled or debatable and allow the client to make the decision.

2 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice § 17.15 at 531-32 (4th ed. 1996).

Additionally, an allegation that an attorney is negligent by failing to inform a client of an unsettled legal issue relevant to a settlement does not demand that an attorney accurately predict the future course of unsettled law. Thus, an allegation that an

attorney did not properly inform a client of relevant unsettled legal issues does not provide the same need for immunity from suit as does an attorney's judgment or recommendation in an area of unsettled law.

In *Williams v. Ely*, 423 Mass. 467, 668 N.E.2d 799 (1996), lawyers affiliated with a law firm prepared disclaimers for clients in which the clients renounced their remainder and contingent interests in a family trust. In affirming the lower court's ruling that a competent estate planning attorney would have advised that the law was unsettled regarding the appropriate time to file the disclaimers, the *Williams* court recognized the difference between alleging negligence for a recommendation based upon an area of unsettled law and alleging negligence for failing to inform a client of relevant unsettled law.

> It does not matter that the opinion that the disclaimers would generate no adverse gift tax consequences was a reasonable view of the law in 1975. The problem is not that Gaston Snow gave reasonable advice that in time proved to be wrong. The problem is that the apparent certainty of the opinion given, at a time when the issue was not conclusively resolved, denied the plaintiffs the opportunity to assess the risk and to elect to follow alternative estate planning options.

*Id.* at 476, 668 N.E.2d at 806. See *First Nat. Bank of Clovis v. Diane, Inc.*, 102 N.M. 548, 698 P.2d 5 (N.M. App. 1985) (holding that while lawyer was not liable for his error in judgment on unsettled legal issue, jury properly considered whether lawyer was negligent for failing to inform client of risk created by unsettled law that recommendation was based upon).

In *Crosby v. Jones*, 705 So. 2d 1356 (Fla. 1998), which the Court of Appeals relied upon, the *Crosby* court addressed whether an attorney must inform a client of the unsettled law relevant to the client's case. In the underlying case, Crosby advised Jones to settle with one of two tort-feasors, but in doing so, Crosby did not advise Jones that a decision from a Florida appellate district court had determined that settling in such a situation would be adverse to her interests. On appeal in her suit against the second tort-feasor, Jones' appellate district court ruled adversely to her. See *Jones v. Gulf Coast Newspapers, Inc.*,

595 So. 2d 90 (Fla. App. 1992). Jones sued Crosby for malpractice, and on appeal, the *Crosby* court held that the attorney had no duty to inform the client of the unsettled nature of the law. However, the court's decision was based upon the fact that at the time of Crosby's recommendation, (1) a statute and a Florida Supreme Court decision appeared to be on point and supported Crosby's recommendation, see Fla. Stat. ch. 768.041(1) (1973), and *Sun First National Bank of Melbourne v. Batchelor*, 321 So. 2d 73 (Fla. 1975), and (2) two prior decisions issued by Jones' own appellate district court, the same court that ruled adversely in the underlying case, also supported Crosby's recommendation to settle. See *Crosby* at 1358-59, 1359 n.2.

In *Crosby*, 705 So. 2d at 1359, the court noted that its decision "does not mean that an attorney should never be required to inform a client regarding a conflict in the law; however, when an interpretation has been made as to the state of the law in a given district and that interpretation has a proper basis of support," an attorney need not advise his or her client of case law from other jurisdictions. Indeed, the facts and the holding in *Crosby* indicate that that case involved the failure to advise a client in an area of *apparently settled* law, rather than *unsettled* law. Thus, regarding apparently settled law, our decision in *Baker v. Fabian, Thielen & Thielen*, 254 Neb. 697, 578 N.W.2d 446 (1998), would be dispositive and in accordance with *Crosby*. In the instant case, however, Pugh had no case law from this jurisdiction which supported the settlement agreement's determinations on the unvested employee stock options or capital gains tax issues.

In *Davis v. Damrell*, 119 Cal. App. 3d 883, 174 Cal. Rptr. 257 (1981), which the Court of Appeals also cited for support, the *Davis* court held that under the circumstances, the doctrine of judgmental immunity applied to the attorney's failure to inform the client of the unsettled nature of the law relating to a settlement agreement. "As a matter of policy," the court stated that an attorney should not be required to compromise his or her good faith and informed judgment by advising the client of the unsettled nature of relevant legal principles. *Id.* at 889, 174 Cal. Rptr. at 260.

The fallacy in the *Davis* court's reasoning is that when determining whether to settle a dispute, it is the client, not the attorney, who bears the risk. Because the client bears the risk, it is the client who should assess whether the risk is acceptable, not the attorney. See Canon 7, EC 7-7 and 7-8; *Williams v. Ely*, 423 Mass. 467, 668 N.E.2d 799 (1996); 2 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice § 17.15 (4th ed. 1996).

Ultimately, we cannot support what would be the clear result of extending the judgmental immunity rule in the instant case. If we conclude that the judgmental immunity rule applies to an attorney's failure to inform a client of unsettled legal issues relevant to a settlement, an attorney could forgo conducting research or providing a client with information on a relevant legal issue once he or she determined that the legal issue at hand was unsettled in this state. We fail to see how this result promotes the settlement of disputes in a client's best interests.

We conclude that the doctrine of judgmental immunity does not apply to an attorney's failure to inform a client of unsettled legal issues relevant to a settlement. Our conclusion makes no judgment as to whether Pugh was negligent. It imposes no additional duty as a matter of law to research or inform a client on unsettled legal matters. Rather, it simply directs that consistent with *Bruning v. Law Offices of Ronald J. Palagi*, 250 Neb. 677, 551 N.W.2d 266 (1996); *McWhirt v. Heavey*, 250 Neb. 536, 550 N.W.2d 327 (1996); and *McVaney v. Baird, Holm, McEachen*, 237 Neb. 451, 466 N.W.2d 499 (1991), whether an attorney is negligent for such a failure is determined by whether the attorney exercised the same skill, knowledge, and diligence as attorneys of ordinary skill and capacity commonly possess and exercise in the performance of all other legal tasks. At the same time, an attorney's ultimate recommendation in an area of unsettled law is immune from suit. *Baker v. Fabian, Thielen & Thielen, supra*. Such a result gives the client the benefit of both professional advice and the information necessary to make an informed decision whether to settle a dispute.

## CONCLUSION

The Court of Appeals erred in concluding that Pugh was not negligent as a matter of law in failing to inform Wood of the

unsettled nature of the law regarding whether unvested stock options were part of the marital estate and whether the marital estate's unvested stock options should have been valued without deducting potential capital gains tax. Accordingly, we reverse the Court of Appeals' decision and remand the cause to the Court of Appeals with directions to remand the cause to the district court for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

STEPHAN and MILLER-LERMAN, JJ., not participating.