746 N.W.2d 143 (2008)
275 Neb. 266
Stanley W. WOLSKI, Jr., appellant,
v.
Josephine Walsh WANDEL, appellee.
No. S-06-1039.
Supreme Court of Nebraska.
March 21, 2008.
*146 E. Dean Hascall, Bellevue, for appellant.
John R. Douglas, of Cassem, Tierney, Adams, Gotch & Douglas, Omaha, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
STEPHAN, J.
This is a professional negligence action brought by Stanley Wolski, Jr., against attorney Josephine Walsh Wandel. Wolski appeals from an order of the district court for Douglas County granting Wandel's motion for summary judgment and dismissing the action. The question presented is whether there is a genuine issue of material fact with respect to Wolski's allegation that Wandel was negligent in representing him in a prior action which was concluded by a settlement. We conclude that there is not and affirm the judgment of the district court.

BACKGROUND

UNDERLYING CASE
In June 2000, Wolski retained Wandel to represent him in a dispute with his sister, Rosemary Parriott, regarding ownership of real property located in Cass County, Nebraska. The controversy arose from the conveyance of two tracts of farmland totaling 119 acres. On December 30, 1974, and January 9, 1975, Wolski's parents conveyed the two tracts by warranty deed to Wolski. Another warranty deed, dated January 14, 1975, transferred the same 119 acres from Wolski to Parriott as "Trustee." This deed did not identify the trust, name a beneficiary, or describe the trust in any other way. Wolski had a longstanding dispute with Parriott regarding income from the property, and in 2000, he retained Wandel to "break" any trust and secure fee simple title in the 119 acres purportedly held in trust. Wandel filed a petition for declaratory judgment for Wolski in Cass County District Court, naming Parriott as the sole defendant. The petition sought to set aside any trust agreement and the warranty deed from Wolski to Parriott. It also requested that Parriott *147 be ordered to give an accounting with respect to funds generated by the property.
The parties conducted extensive discovery. In her deposition, Parriott testified that the trust was originally drafted by an attorney retained by her father. In his deposition, that attorney denied drafting a trust instrument but recalled that at the time of the conveyance to Parriott, Wolski's parents were concerned about Wolski's having title in his name because of "creditors or marriage or something" and that it was "anticipated that there would be a deed back" from Parriott to Wolski. No trust agreement existing at the time of the 1975 conveyance from Wolski to Parriott was ever located.
Parriott testified that the original trust was amended on May 29, 1982, by a document entitled "Amendments of Trust Agreement." The amendment was signed by Wolski as grantor and Parriott as trustee and provides that the trust would be irrevocable, that Wolski would have a life estate in the real property, and that the remainder would pass to Parriott or her lineal heirs. The signatures on hi document were not notarized.
Discovery in the case also disclosed that Wolski was married in 1982, several months after the date of the amendment. On September 8, 1987, Parriott was appointed guardian and conservator for Wolski. In that capacity, she brought a successful action to annual his marriage. The record reflects that the conservatorship was terminated in 1995 and that the guardianship was terminated in 1997.
During the pendency of he underlying suit against Parriott, Wandel filed a motion for the appointment of a guardian ad litem for Wolski, alleging that his mother, who had previously acted as his "natural Guardian," was unable to attend trial or assist him due to deterioration of her health. Attached to the motion were medical records showing that Wolski had certain disabilities affecting his mental capacity and speech. The court sustained the motion and appointed attorney Thomas Harmon as guardian ad litem for Wolski on August 21, 2001. Upon his appointment, Harmon conducted an investigation which included interviews with Wolski, Parriott, various members of their family, and attorneys who had represented the parties in the past. According to Harmon, Wolski told him that he wanted to ensure that he always had a place to live and that he would have money for living expenses.
At a November 2, 2001, hearing, the parties advised the court that they had settled the case. Under the terms of the settlement read into the record at that time, the parties agreed to establish a conservatorship for Wolski, with Harmon to serve as conservator. Wolski was granted a life estate in the 119-acre tract, with the remainder to Parriott or her lineal heirs. The settlement also provided that any condemnation award or any other proceeds received from an invasion of Wolski's life estate would be shared equally by Wolski and Parriott and that they would also share the lease payments made with respect to a sand and gravel lease of the property. Harmon stated on the record that he believed this settlement agreement was "fair and reasonable and in [Wolski's] best interests" and asked the court to approve it. Parriott also asked the court to approve the settlement. The court received testimony from a clinical psychologist who had recently examined Wolski and concluded that appointment of a guardian and conservator for him would be appropriate.
In a subsequent order, the court approved the settlement agreement and awarded Wolski a life estate in the real property and awarded the remainder interest to Parriott and her lineal heirs, *148 subject to the condition that mineral lease payments and condemnation awards with respect to the property were to be divided equally between the parties. Parriott deeded the property to Harmon, as Wolski's conservator. Through his current attorney, Wolski unsuccessfully sought to vacate the order approving the settlement.

PROFESSIONAL NEGLIGENCE ACTION
Wolski then commenced this action against Wandel, alleging that she breached her duty to Wolski by "failing to use the degree of skill and care ordinarily used by Nebraska licensed attorneys" in several particulars, all relating in some way to the settlement of the litigation against Parriott. Wolski claimed damages based upon the difference in value of fee simple title to the real property and the life estate which he received in the settlement. Wandel filed an answer in which she denied the allegations of negligence and asserted affirmative defenses. Wandel specifically alleged that "after many discussions with counsel and his Guardian Ad Litem, [Wolski] approved the settlement agreement" in the prior action.
Wandel moved for summary judgment, and Wolski moved for partial summary judgment on the issue of liability. The district court initially denied Wandel's motion, noting that she had not made a prima facie showing that she had met the standard of care, but did not rule on Wolski's motion at that time. Wandel then filed a renewed motion for summary judgment, and the court conducted a hearing on that motion and Wolski's motion for partial summary judgment. At this heating, Wandel offered the affidavit of attorney Michael D. Jones, which was received without objection. Wolski offered additional evidence, which was also received without objection. Wolski offered additional evidence, which was also received.
The court entered an order denying Wolski's motion, granted Wandel's motion, and dismissing the action. It noted that Wandel had made a prima facie showing in support of her motion or summary judgment and that Wolski had failed to demonstrate the existence of a genuine issue of material fact. Wolski perfected this timely appeal, which we moved to out docket on our own motion pursuant to put statutory authority to regulate the dockets of the appellate courts of this state.[1]

ASSIGNMENT OF ERROR
Wolski assigns, rested, that the district court erred in determining that there was no genuine issue of material fact as to whether Wandel breached the standard of care and in granting Wandel's motion for summary judgment.

STANDARD OF REVIEW
Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[2] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[3]

ANALYSIS
A client who has agreed to the settlement of an action is not barred from *149 recovering against his or her attorney for malpractice if the client can establish that the settlement agreement was the product of the attorney's negligence.[4] Wolski claims that Wandel was negligent in recommending settlement of the litigation against Parriott instead of proceeding to trial. In a civil action for legal malpractice, a plaintiff alleging professional negligence on the part of an attorney must prove three elements: (1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss (damages) to the client.[5]
[5-7] In this case, we focus on the second element: neglect of a reasonable duty. The general rule regarding an attorney's duty to his or her client is that the attorney, by accepting employment to give legal advice or to render other legal services, impliedly agrees to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake.[6] Although this general standard is established by law, the question of what an attorney's specific conduct should be in a particular case and whether an attorney's conduct fell below that specific standard is a question of fact.[7] Expert testimony is generally required to establish an attorney's standard of conduct in a particular circumstance and that the attorney's conduct was not in conformity therewith.[8] This is so because a jury cannot rationally apply a general statement of the standard of care unless it is made aware of what a reasonable attorney would have done in similar circumstances.[9] An exception to this general rule is that where the evidence and circumstances are such that recognition of the alleged negligence may be presumed to be within the comprehension of laypersons, no expert testimony is required.[10]
[8,9] As the party moving for summary judgment, Wandel was required to make a prima facie case by producing enough evidence to demonstrate that she would be entitled to judgment if the evidence were uncontroverted at trial.[11] Wandel met this burden by offering the affidavit of Jones, an attorney practicing in Omaha with experience in the area of business, trusts, probate, and estate planning. In his affidavit, Jones stated that he had reviewed documents from the underlying litigation in which Wandel represented Wolski, as well as certain pleadings and discovery documents generated in this case. Based upon this review and his professional knowledge and experience, Jones expressed his opinion that the outcome of the underlying litigation was uncertain, that the settlement was a reasonable resolution of the dispute, and that Wandel's recommendation of the settlement "was within the standard of care for attorneys *150 in Omaha, Douglas County, Nebraska at the time of the settlement." He further stated: "[I]t is my opinion with a reasonable degree of certainty that ... Wandel's conduct and legal advice to her client ... Wolski ... met or exceeded the standard of care required of an attorney in Omaha, Douglas County, Nebraska at the time of her representation of ... Wolski in all material respects."
[10, 11] Once the party moving for summary judgment makes a prima facie case, as Wandel did here, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion.[12] This case does not fall within the exception to the general rule requiring expert testimony to prove that an attorney was negligent, in that a layperson could not be expected to know, without the assistance of expert testimony, whether an attorney was negligent in counseling a client to settle litigation of the type involved here. Thus, in order to defeat Wandel's motion for summary judgment, Wolski was required to present an expert's opinion contradicting Jones' opinion that Wandel's performance had met the standard of care.
There is evidence from three attorneys concerning Wandel's representation of Wolski. Ronald E. Reagan, a practicing attorney and retired district judge, was retained by Wolski's attorney to review documents and "formulate some opinions as to whether or not ... Wandel had breached any particular duty or standard of care." His deposition was taken by Wandel's attorney prior to the date of Jones' affidavit, and thus his testimony is not directly responsive to Jones' opinions. Reagan testified that Wandel owed the same duty to Wolski and to Harmon as Wolski's guardian ad litem. He criticized Wandel for not providing certain "relevant information" about the underlying litigation to Harmon and opined that if Harmon had been given this information, he would not have concluded that the settlement was in Wolski's best interests. Reagan testified that, in his opinion, the underlying case should have been tried and that Wolski would have prevailed. Reagan did not specifically express an opinion that Wandel breached the applicable standard of care.
Harmon testified by deposition, taken prior to that of Reagan, and also by an affidavit sworn after Reagan's deposition. In the affidavit, Harmon stated that after his appointment as guardian ad litem, he had a meeting with Wolski and Wandel and two other meetings with Wolski, to discuss the pending case and Wolski's desires concerning its outcome. He stated that despite Wolski's speech impediment, Harmon was able to "communicate with him sufficiently to understand his desires, wishes and position on the issues we discussed." Harmon further stated that he conducted several interviews and reviewed court records before reaching an independent determination that the settlement was in Wolski's best interests. Harmon stated that he had reviewed Reagan's deposition and that Reagan was incorrect regarding the information he possessed at the time of the settlement. Harmon stated that he had all of the information which Reagan said should have been provided to him, either as a result of his own investigation or from conversations with Wandel, with the exception of one document. Harmon stated that after reviewing this document, which was attached to Reagan's deposition, he would not have considered it relevant to the case or the proposed settlement. He concluded: "I therefore believe I was aware of all the relevant matters ... *151 Reagan erroneously assumed [that] I did not know and needed to be advised of by... Wandel." Harmon did not express an opinion that Wandel breached the applicable standard of care.
The record also includes Wandel's deposition, in which she responded to questions concerning her representation of Wolski. The deposition does not include any admissions of professional negligence.
We conclude that Wolski did not meet his burden of demonstrating the existence of a genuine issue of material fact. Reagan's testimony falls short of this objective. Although Reagan expressed criticism of certain aspects of Wandel's representation, he did not specifically opine that her performance deviated from the applicable standard of care. In a medical malpractice case, we have held that an expert's testimony that a surgical procedure should have been performed in a different manner did not constitute evidence that the defendant had departed from the applicable standard of care in performing the surgery in the way that he did.[13] We noted that if the expert believed that there had been a deviation from the standard of care, "it would have been a simple matter ... to have said exactly that."[14] Reagan's "criticism" of Wandel was similarly insufficient as evidence of professional negligence. At most, Reagan's testimony establishes that his evaluation of the underlying case differed from that of Wandel. It is not uncommon for lawyers to have differing views about the merits of a contested case, and such a difference of opinion between lawyers does not necessarily mean that one of them has been negligent in evaluating the case. Reagan's testimony does not establish that Wandel's professional performance fell below that expected of lawyers of ordinary skill and capacity under similar circumstances.[15]
[12, 13] The decision to settle a controversy is the client's.[16] In order to meaningfully make that decision, a client must have the information necessary to assess the risks and benefits of either settling or proceeding to trial.[17] A lawyer should exert his or her best efforts to ensure that the decisions of a client are made only after the client has been informed of relevant considerations.[18] Under the Code of Professional Responsibility which governed lawyers' conduct at the time of Wandel's representation, Wandel was required to look to Harmon, as guardian ad litem, to make decisions concerning settlement on behalf of Wolski.[19] The record includes an expert's opinion that Wandel complied with the standard of care in advising Harmon with regard to the settlement, and Wolski has presented no expert opinion to the contrary. There is no genuine issue of material fact as to the allegations of professional negligence.

CONCLUSION
For the reasons discussed, we conclude that the district court did not err in granting Wandel's motion for summary judgment *152 and dismissing this action. We affirm the judgment of the district court.
AFFIRMED.
NOTES
[1] See Neb.Rev.Stat. § 24-1106(3) (Reissue 1995).
[2] Erickson v. U-Haul Internat., 274 Neb. 236, 738 N.W.2d 453 (2007).
[3] Id.
[4] Bruning v. Law Offices of Ronald J. Palagi, 250 Neb. 677, 551 N.W.2d 266 (1996); McWhirt v. Heavey, 250 Neb. 536, 550 N.W.2d 327(1996).
[5] See, Bellino v. McGrath North, 274 Neb. 130, 738 N.W.2d 434 (2007); Borley Storage & Transfer Co. v. Whitted, 271 Neb. 84, 710 N.W.2d 71 (2006).
[6] Bellino v. McGrath North, supra note 5; Baker v. Fabian, Thielen & Thielen, 254 Neb. 697, 578 N.W.2d 446 (1998).
[7] See Boyle v. Welsh, 256 Neb. 118, 589 N.W.2d 118 (1999).
[8] Id.
[9] See id., citing Gibson v. Talley, 162 Ga.App. 303, 291 S.E.2d 72 (1982).
[10] Boyle v. Welsh, supra note 7.
[11] See, Cerny v. Longley, 270 Neb. 706, 708 N.W.2d 219 (2005); Boyle v. Welsh, supra note 7.
[12] See, Cerny v. Longley, supra note 11; Boyle v. Welsh, supra note 7.
[13] Kortus v. Jensen, 195 Neb. 261, 237 N.W.2d 845 (1976).
[14] Id. at 272, 237 N.W.2d at 852.
[15] See Bellino v. McGrath North, supra note 5.
[16] Wood v. McGrath, North, 256 Neb. 109, 589 N.W.2d 103 (1999), citing Code of Professional Responsibility, Canon 7, EC 7-7 and 7-8.
[17] See id.
[18] See id.
[19] See Code of Professional Responsibility, Canon 7, EC 7-12.