Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/12/2016 09:05 AM CDT

- 869 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
SHRINER v. FRIEDMAN LAW OFFICES
Cite as 23 Neb. App. 869

DEBRA A. SHRINER, APPELLANT, V.
FRIEDMAN LAW OFFICES, P.C., L.L.O.,
AND DANIEL H. FRIEDMAN, APPELLEES.

___ N.W.2d ___

Filed April 12, 2016.    No. A-15-051.

1. **Summary Judgment.** Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.

3. **Attorney and Client: Malpractice: Negligence: Proof.** A client who has agreed to the settlement of an action is not barred from recovering against his or her attorney for malpractice if the client can establish that the settlement agreement was the product of the attorney's negligence.

4. **Judgments: Res Judicata.** The doctrine of res judicata, now called claim preclusion, bars litigation of any claim that has been directly addressed or necessarily included in a former adjudication, as long as (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions.

5. **Res Judicata.** Claim preclusion does not apply to permissive cross-claims that could have been raised in a former action but were not.

6. **Judgments: Collateral Estoppel.** Issue preclusion applies where (1) an identical issue was decided in a prior action, (2) the prior action

- 870 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
SHRINER v. FRIEDMAN LAW OFFICES
Cite as 23 Neb. App. 869

resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action.

7. **Malpractice: Attorney and Client: Negligence: Proof: Proximate Cause: Damages.** In a civil action for legal malpractice, a plaintiff alleging professional negligence on the part of an attorney must prove three elements: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) that such negligence resulted in and was the proximate cause of loss to the client.

8. **Estoppel.** The doctrine of judicial estoppel prohibits one who has successfully and unequivocally asserted a position in a prior proceeding from asserting an inconsistent position in a subsequent proceeding.

9. **Equity: Estoppel.** The elements of equitable estoppel are, as to the party estopped, (1) conduct which amounts to a false representation or concealment of material facts, or at least which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts.

10. ____: ____. The elements of equitable estoppel are, as to the party invoking the doctrine, (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his or her injury, detriment, or prejudice.

11. **Summary Judgment: Final Orders: Appeal and Error.** Although the denial of a motion for summary judgment, standing alone, is not a final, appealable order, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct such further proceedings as it deems just.

12. **Malpractice: Testimony.** Where a mediator's testimony is relevant to disproving a claim or complaint of professional misconduct or malpractice filed against a representative of a mediation party based on conduct occurring during a mediation, the testimony falls within an exception to the mediation communications privilege.

Appeal from the District Court for Lancaster County: William B. Zastera, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

James D. Sherrets and Jared C. Olson, of Sherrets, Bruno & Vogt, L.L.C., for appellant.

Shawn D. Renner and Susan K. Sapp, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellees.

Moore, Chief Judge, and Inbody and Bishop, Judges.

Bishop, Judge.

## I. INTRODUCTION

Debra A. Shriner filed a legal malpractice action in the district court for Lancaster County, Nebraska, against attorney Daniel H. Friedman and his law firm, Friedman Law Offices, P.C., L.L.O., arising out of Friedman's representation of Shriner in an underlying personal injury action filed in Hall County, Nebraska. The name "Friedman" is used herein to refer to Friedman and to Friedman Law Offices collectively as well as to Friedman individually. In Shriner's legal malpractice action, she alleged that Friedman coerced her into accepting a settlement offer of $45,000 in the underlying action and that he breached the standard of care for an attorney by, among other things, failing to properly value and prosecute her claim and advising her to accept the settlement offer.

After Shriner and Friedman filed motions for summary judgment in the legal malpractice action, the district court entered summary judgment in Friedman's favor. The court determined that Shriner voluntarily agreed to settle the underlying action and, furthermore, that she ratified the settlement agreement by accepting the settlement proceeds. According to the district court, Shriner could not then "claim to have been forced, pressured and/or coerced" into settling the underlying claim. Shriner timely appealed to this court.

- 872 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
SHRINER v. FRIEDMAN LAW OFFICES
Cite as 23 Neb. App. 869

As we explain below, we reverse the district court's judgment insofar as it granted Friedman's motion for summary judgment, but we affirm the district court's judgment insofar as it denied Shriner's cross-motion for summary judgment. Because it is likely to arise on remand, we also address Shriner's argument that testimony from the mediator of the settlement in the underlying action was privileged. We determine the testimony fell within an exception to the privilege and was admissible.

## II. BACKGROUND

On December 29, 2006, in Grand Island, Nebraska, a truck driven by Randall Svoboda, an employee of Cloudburst Underground Sprinkler Systems, Inc. (Cloudburst), struck the passenger-side rear quarter panel of Shriner's vehicle as she passed through an intersection. As a result of the collision, Shriner's vehicle spun around, coming to rest facing the opposite direction of travel. According to Shriner, the collision resulted in injuries to her person, damage to her vehicle, ongoing medical expenses, and lost wages.

Following her accident, Shriner had contact with two law firms, Sokolove Law, LLC (Sokolove), and Underhill & Underhill, P.C. (Underhill), before ultimately being referred to Friedman for representation. In April 2010, Shriner retained Friedman to represent her pursuant to a contingent fee arrangement in which Friedman would receive 33⅓ percent of any recovery from Svoboda and Cloudburst. Allegedly unknown to Shriner was a fee-splitting arrangement among Friedman, Sokolove, and Underhill in which the three law firms agreed to share any attorney fees.

On June 14, 2010, Friedman filed suit on Shriner's behalf against Svoboda and Cloudburst in the district court for Hall County, seeking damages arising out of the collision. On July 12, 2012, the parties to the personal injury action attended a mediation with mediator Matthew Miller. During the mediation, Svoboda and Cloudburst's insurer authorized a

- 873 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
SHRINER v. FRIEDMAN LAW OFFICES
Cite as 23 Neb. App. 869

settlement offer of $45,000, which Friedman allegedly advised Shriner to accept.

According to Shriner's amended complaint in her legal malpractice action, Friedman told her that if she did not accept the settlement offer, Friedman would no longer advance litigation costs for her case. Specifically, to proceed to trial, Shriner would be required to pay for deposing up to four medical professionals, anticipated to cost $3,000 to $5,000 per witness. According to Shriner, although she was indigent and informed Friedman she desired to take the case to trial, Friedman persisted. As described in her amended complaint, Shriner "relented under the pressure and duress and 'told . . . Friedman, in anger, that if that's all [she] had to get, that's what [she]'d have to get.'" Friedman then accepted the $45,000 settlement offer on Shriner's behalf.

Six days after the mediation, Shriner informed Friedman she would not sign a release or accept the proceeds of the settlement reached during the mediation. Thereafter, Friedman filed a motion to withdraw as Shriner's counsel of record in the personal injury action, and Svoboda and Cloudburst filed a motion to enforce the settlement agreement.

On August 9, 2012, the district court for Hall County heard both motions. At the hearing, Shriner appeared with a new attorney, John Sellers, and testified in opposition to Friedman's motion to withdraw. After hearing Shriner's testimony, the court granted the motion to withdraw; it then turned to the issue of the motion to enforce the settlement agreement. Sellers requested an opportunity either to recall Shriner as a witness or to obtain her written affidavit. The court questioned whether Shriner's testimony was necessary if her prior attorney had apparent authority to accept the settlement offer at the mediation. The court indicated that Sellers could present evidence but cautioned, "I think you're kind of climbing a hill." Sellers submitted no evidence, and the court granted the motion to enforce the settlement agreement.

- 874 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
SHRINER v. FRIEDMAN LAW OFFICES
Cite as 23 Neb. App. 869

On October 15, 2012, Svoboda and Cloudburst's insurer filed a complaint for interpleader and declaratory judgment in the district court for Hall County. Named as defendants were Shriner, "Herbert J. Friedman d/b/a Friedman Law Offices," and two companies with alleged claims to portions of the settlement proceeds. The insurer sought to deposit the settlement funds of $45,000 with the court clerk for distribution among the defendants in exchange for an order releasing it and its insureds from liability in connection with Shriner's personal injury claim. The insurer set forth the grounds for the various defendants' claims to the settlement proceeds; in particular, the insurer alleged that Friedman asserted an attorney's lien pursuant to Neb. Rev. Stat. § 7-108 (Reissue 2012).

The district court for Hall County directed the insurer to deposit the settlement proceeds with the court clerk and released Svoboda, Cloudburst, and their insurer from liability. Shortly thereafter, Shriner, who was represented by Sellers in the interpleader action, filed a "Motion to Approve Settlement and Final Order," in which she alleged that the remaining parties to the interpleader action had reached an agreement regarding their claims to the settlement proceeds, which claims the defendants wished to resolve without further litigation. Shriner asked the court to approve disbursement of the settlement proceeds in the following amounts: (1) $6,666.66 to the State of Nebraska, (2) $3,333 to one company with an alleged claim, (3) $10,000 to the other such company, (4) $12,159.49 to Friedman, (5) $1,500 to Sellers, and (6) $11,340.85 to Shriner.

On March 6, 2013, the district court for Hall County entered an order approving the agreement and ordering the settlement proceeds disbursed in the manner Shriner proposed. The court found the agreement was not unconscionable.

On December 31, 2013, Shriner commenced her legal malpractice action in the district court for Lancaster County. In an amended complaint filed on September 2, 2014, Shriner set forth much of the background outlined above and further

- 875 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
SHRINER v. FRIEDMAN LAW OFFICES
Cite as 23 Neb. App. 869

alleged that at the time of the mediation in the underlying personal injury action, Cloudburst's liability was "established by the facts." Shriner further alleged that at the time of the mediation, she had incurred medical expenses in excess of $67,000, with more than $100,000 in future medical expenses anticipated, and that two of her treating physicians had opined that her medical treatment was necessary as a result of the collision, her injuries were permanent, and she would require future medical treatment. Shriner alleged that despite these facts, Friedman coerced her into accepting the "grossly inadequate" settlement offer of $45,000.

Shriner's amended complaint contained four counts: (1) professional negligence, (2) breach of contract, (3) breach of implied contract, and (4) fraud. In the professional negligence count, Shriner alleged Friedman breached the standard of care for an attorney by (i) entering into a "multi-stage fee-sharing agreement" with multiple law firms, (ii) failing to properly value and prosecute her claim, (iii) demanding payment of litigation costs as a prerequisite to continued representation, and (iv) advising her to accept the $45,000 settlement offer.

In the counts for breach of contract and breach of implied contract, Shriner alleged she had either an express contract or an implied contract for representation in the underlying personal injury action. She alleged Friedman breached the express or implied contract by (i) failing to competently represent her, (ii) providing her with unreasonable legal advice at the time of the mediation, (iii) refusing to advance the costs necessary to proceed to trial, and (iv) demanding that Shriner advance litigation costs.

In the fraud count, Shriner alleged that Friedman, in order to secure a contract for her representation, told Shriner she would be responsible for costs of litigation only after a settlement or judgment was obtained even though Friedman knew he would demand that Shriner "pay costs of the litigation up front if [Friedman] could not achieve an easy settlement agreement."

- 876 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
SHRINER v. FRIEDMAN LAW OFFICES
Cite as 23 Neb. App. 869

Shriner alleged that she relied on Friedman's "false statement" and that she was damaged as a result.

Friedman filed an answer denying the material allegations of the amended complaint. As affirmative defenses, Friedman alleged, in pertinent part, that Shriner's claim was barred under the doctrines of res judicata, collateral estoppel, equitable estoppel, judicial estoppel, waiver, release, and laches. In support, Friedman relied on Shriner's failure to present any evidence in opposition to Svoboda and Cloudburst's motion to enforce the settlement agreement in the underlying personal injury action, as well as Shriner's agreement with the defendants in the interpleader action as to disbursement of the settlement proceeds. Friedman alleged that Shriner accepted the benefits of the settlement and that her position in the legal malpractice action was contrary to the positions she took in the underlying personal injury and interpleader actions.

Shortly after Friedman filed the answer and affirmative defenses to Shriner's amended complaint in the legal malpractice action, Friedman filed a motion for summary judgment, arguing Shriner's claim was barred under the doctrines of res judicata, collateral estoppel, equitable estoppel, judicial estoppel, and waiver. Friedman submitted exhibits in support of the motion, including (1) the deposition of Miller, the mediator of the settlement in the underlying action; (2) the transcript of the hearing on Svoboda and Cloudburst's motion to enforce the settlement in the underlying action; (3) Friedman's affidavit; (4) the retainer agreement executed between Shriner and Friedman; (5) the joint representation agreement executed among Shriner, Friedman, and Underhill; and (6) the court filings and orders from the interpleader action.

Shriner then filed a "Cross-Motion for Summary Judgment." She argued that there was no genuine issue of material fact with respect to any of her claims and that she was entitled to judgment as a matter of law. In support of her motion, Shriner offered the following exhibits: (1) the affidavit of Shane Warner, an expert witness who opined Friedman violated

- 877 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
SHRINER v. FRIEDMAN LAW OFFICES
Cite as 23 Neb. App. 869

the applicable standard of care; (2) Shriner's affidavit; (3) Shriner's deposition and written discovery responses in the personal injury action; (4) the depositions of Kathleen Neary and Michael Mullin, Friedman's expert witnesses in the legal malpractice action; (5) the deposition of Svoboda in the personal injury action; and (6) documents summarizing Shriner's medical bills.

In opposition to Shriner's motion for summary judgment, Friedman offered affidavits from Neary and Mullin summarizing their expert opinions on Shriner's legal malpractice action. Both experts opined Friedman's representation of Shriner fell within the applicable standard of care. We discuss additional details of the parties' summary judgment exhibits as necessary in our analysis section below.

Before a hearing was held on the motions for summary judgment, Shriner filed a "Motion in Limine to Exclude Testimony of . . . Miller," in which Shriner sought an order excluding testimony from Miller regarding his role as mediator in the underlying action. She maintained that mediation communications were privileged pursuant to Neb. Rev. Stat. § 25-2933 (Reissue 2008) and that Miller's testimony could not be considered absent an express waiver from all parties to the mediation.

Following a brief hearing on the motions for summary judgment at which the court received the submitted exhibits, the court took the matter under advisement. At the hearing, Shriner renewed her objection to Miller's testimony on the basis that it related privileged mediation communications.

On December 26, 2014, the court entered a written opinion and order granting Friedman's motion for summary judgment and denying Shriner's motion for summary judgment. The court did not expressly address Shriner's motion in limine to exclude Miller's testimony, but in its order, the court referenced Miller's testimony that there was no question in his mind that Shriner had validly authorized acceptance of the settlement.

- 878 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
SHRINER v. FRIEDMAN LAW OFFICES
Cite as 23 Neb. App. 869

In addition to relying on Miller's testimony, the court noted that in the interpleader action, Shriner "stipulated that she, [Friedman], and the other parties had reached an agreement regarding their individual claims to the settlement proceeds . . . and wished to resolve the matter without further litigation." The court also noted Shriner had "accepted and retained the monies obtained from the settlement agreement." Based on these considerations, the court concluded Shriner "voluntarily agreed" to the settlement and "ratified" the settlement agreement. The court ruled Shriner could not "claim to have been forced, pressured and/or coerced into settling her claim," and it entered summary judgment in Friedman's favor.

Shriner timely appealed to this court.

## III. ASSIGNMENTS OF ERROR

Shriner assigns, renumbered and restated, that the district court erred in (1) granting Friedman's motion for summary judgment, (2) denying Shriner's motion for summary judgment, (3) relying on Miller's privileged testimony regarding mediation communications, (4) finding Shriner voluntarily settled her underlying personal injury claim, and (5) not finding Friedman breached the standard of care.

## IV. STANDARD OF REVIEW

[1,2] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *New Tek Mfg. v. Beehner*, 275 Neb. 951, 751 N.W.2d 135 (2008).

- 879 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
SHRINER v. FRIEDMAN LAW OFFICES
Cite as 23 Neb. App. 869

## V. ANALYSIS

Before we address the parties' arguments, we note the legal basis of the district court's summary judgment order is less than clear. In the order, after discussing Shriner's conduct in the underlying personal injury and interpleader actions, the court concluded that Shriner "voluntarily agreed" to the settlement and that she "ratified" the settlement agreement. The court then ruled Shriner could not "claim to have been forced, pressured and/or coerced into settling her claim" and entered summary judgment in Friedman's favor. The court cited no legal authority and provided no explanation for why Shriner's acceptance or ratification of the settlement or settlement agreement barred her legal malpractice cause of action against Friedman. As will be discussed next, the law does not bar such a cause simply because a client has entered into a settlement agreement and a court orders it into effect.

[3] The Nebraska Supreme Court has held, "A client who has agreed to the settlement of an action is not barred from recovering against his or her attorney for malpractice if the client can establish that the settlement agreement was the product of the attorney's negligence." *Wolski v. Wandel*, 275 Neb. 266, 271, 746 N.W.2d 143, 148-49 (2008). This is true even where a court has approved the settlement agreement. *Bruning v. Law Offices of Ronald J. Palagi*, 250 Neb. 677, 551 N.W.2d 266 (1996). In *Bruning*, the plaintiff entered into a workers' compensation lump-sum settlement agreement and executed a release of claims. The settlement was approved by the compensation court, as well as a district court. The plaintiff subsequently commenced an action against his workers' compensation lawyers for professional negligence on several different grounds, including obtaining a settlement that was inadequate. The defendants in that case argued they were entitled to judgment as a matter of law because the execution of the settlement and release in the underlying action barred the professional negligence action. The Nebraska Supreme Court disagreed, setting forth the legal principle above that a

- 880 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
SHRINER v. FRIEDMAN LAW OFFICES
Cite as 23 Neb. App. 869

client is not barred from bringing a malpractice action simply because he agreed to a settlement. *Id.*

Applying the legal principles set forth above, neither Shriner's settlement of her personal injury claim nor the ruling by the district court for Hall County that the settlement agreement was enforceable bars Shriner's legal malpractice action against Friedman.

However, this case involves an added twist, the interpleader action. If there is a basis to affirm the district court's summary judgment order, it lies somewhere in this procedural wrinkle. In light of this circumstance, we address the parties' arguments in reverse order. We first address Friedman's arguments that Shriner is legally or equitably barred from pursuing her legal malpractice claim. If Friedman is correct, then we may affirm the district court's entry of summary judgment in Friedman's favor, even if its reasoning may have been wrong or unclear. See *Swift v. Dairyland Ins. Co.*, 250 Neb. 31, 35, 547 N.W.2d 147, 150 (1996) ("[a] proper result will not be reversed merely because it was reached for the wrong reasons").

### 1. Friedman's Motion for Summary Judgment

Friedman argues summary judgment in Friedman's favor was proper because Shriner's legal malpractice claim is barred under the doctrines of res judicata, collateral estoppel, judicial estoppel, and equitable estoppel. Although Friedman also raised the issue of waiver in moving for summary judgment in the district court, Friedman has not raised this issue on appeal.

### (a) Res Judicata or Claim Preclusion

[4] The doctrine of res judicata, now called claim preclusion, bars litigation of any claim that has been directly addressed or necessarily included in a former adjudication, as long as (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final

- 881 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
SHRINER v. FRIEDMAN LAW OFFICES
Cite as 23 Neb. App. 869

judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions. See *Hara v. Reichert*, 287 Neb. 577, 843 N.W.2d 812 (2014). Claim preclusion bars litigation not only of those matters actually litigated, but also of matters which could have been litigated in the former proceeding. See *id.* Generally, judgments entered by agreement or consent are treated as final judgments on the merits for purposes of claim preclusion. See *Blazek v. City of Omaha*, 232 Neb. 562, 441 N.W.2d 205 (1989).

Friedman contends Shriner's legal malpractice action is barred under the doctrine of claim preclusion because (1) the district court for Hall County had jurisdiction over the interpleader action, (2) Shriner and Friedman were parties to the interpleader action, (3) the parties to the interpleader action agreed to entry of an order that constituted a final judgment on the merits, and (4) "the issues raised by Shriner's professional negligence claims, breach of contract claims, and fraud claims . . . *could have been raised* in the Interpleader Action." Brief for appellees at 26.

Shriner responds that the interpleader action was not the proper forum to litigate her legal malpractice claims. She contends that a party to an action in Nebraska is not required to plead a counterclaim or cross-claim and that therefore, she is not barred from pursuing her legal malpractice action.

Because Shriner and Friedman (actually, "Herbert J. Friedman d/b/a Friedman Law Offices," presumably in privity with Friedman) were codefendants in the interpleader action, if Shriner had raised her legal malpractice claims in the interpleader action, it would have been by cross-claim. Under Neb. Ct. R. Pldg. § 6-1113(g), a cross-claim "may" be filed by one party against a coparty to an action if the cross-claim (1) arises "out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein" or (2) relates "to any property that is the subject matter of the original action."

- 882 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
SHRINER v. FRIEDMAN LAW OFFICES
Cite as 23 Neb. App. 869

As the parties' arguments suggest, if Shriner could have filed a cross-claim alleging legal malpractice against Friedman in the interpleader action, then a conflict arises between the permissive cross-claim rule embodied in § 6-1113(g) and the doctrine of claim preclusion. Stated another way, if Shriner could have filed a cross-claim against Friedman in the interpleader action but failed to do so, we must decide whether claim preclusion bars her subsequent legal malpractice action. The first step is to determine whether Shriner could have filed a cross-claim against Friedman in the interpleader action.

The basic purpose of interpleader is to allow adverse claimants to litigate between or among themselves their conflicting rights or claims to property or a fund, without involving the stakeholder, who disclaims any interest in the property or fund. See *Ehlers v. Perry*, 242 Neb. 208, 494 N.W.2d 325 (1993). In the insurer's interpleader action in which Shriner and Friedman were involved, the fund was the $45,000 in settlement proceeds. Friedman's claim to a portion of the proceeds took the form of the attorney's lien Friedman asserted pursuant to § 7-108. To enforce the attorney's lien, Friedman was required to establish the existence and terms of any fee contract, the making of any disclosures to the client required to render a contract enforceable, and the extent and value of Friedman's professional services. See *Hauptman, O'Brien v. Turco*, 273 Neb. 924, 735 N.W.2d 368 (2007). Evidence of the extent and value of an attorney's professional services is necessary for a court to determine the reasonableness of the attorney fees. *Id*. "[A]n attorney fee computed pursuant to a contingent fee agreement is subject to the same standard of reasonableness as any other attorney fee." *Id.* at 931, 735 N.W.2d at 374.

In light of the elements Friedman was required to prove to enforce the attorney's lien, including the extent and value of Friedman's professional services, Shriner could have filed a cross-claim against Friedman alleging legal malpractice. The transaction or occurrence that was the subject matter

- 883 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
SHRINER v. FRIEDMAN LAW OFFICES
Cite as 23 Neb. App. 869

of Friedman's attorney's lien was Friedman's provision of professional services to Shriner in the personal injury action. The claims Shriner asserts in her legal malpractice action arose out of that same transaction or occurrence. Although we have not located a Nebraska case involving this procedure, it has been done elsewhere. See *Gilbert v. Montlick & Associates, P.C.*, 248 Ga. App. 535, 546 S.E.2d 895 (2001) (former client filed cross-claim for legal malpractice against former attorney when attorney asserted attorney's lien in interpleader action).

Because we conclude Shriner could have filed a cross-claim against Friedman in the interpleader action, we must now decide whether claim preclusion bars her legal malpractice action. We have not located any Nebraska case addressing this issue; therefore, we look to out-of-state cases for guidance.

Although there is limited contrary authority, see, e.g., *Citizens Exchange Bank of Pearson v. Kirkland*, 256 Ga. 71, 344 S.E.2d 409 (1986), a significant number of states have declined to apply the doctrine of claim preclusion to permissive cross-claims that were not asserted in a prior action. See, *Israel v. Farmers Mut. Ins. Ass'n of Iowa*, 339 N.W.2d 143 (Iowa 1983); *Houlihan v. Fimon*, 454 N.W.2d 633 (Minn. App. 1990); *Hemme v. Bharti*, 183 S.W.3d 593 (Mo. 2006); *Executive Mgmt. v. Ticor Title Ins. Co.*, 963 P.2d 465 (Nev. 1998); *Glover v. Krambeck*, 727 N.W.2d 801 (S.D. 2007); *State and County Mut. Fire Ins. v. Miller*, 52 S.W.3d 693 (Tex. 2001); *Krikava v. Webber*, 43 Wash. App. 217, 716 P.2d 916 (1986); *Wisconsin Public Service v. Arby Const.*, 798 N.W.2d 715 (Wis. App. 2011). Federal courts applying Fed. R. Civ. P. 13(g), which is nearly identical to § 6-1113(g), have likewise held that a party to an action having a claim in the nature of a cross-claim has the option to pursue it in a later action. See, *Peterson v. Watt*, 666 F.2d 361 (9th Cir. 1982); *Augustin v. Mughal*, 521 F.2d 1215 (8th Cir. 1975). See, also, 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1431 at 275-76 (3d ed. 2010) ("'[a] party

- 884 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
SHRINER v. FRIEDMAN LAW OFFICES
Cite as 23 Neb. App. 869

who decides not to bring a claim under Rule 13(g) will not be barred by res judicata, waiver, or estoppel from asserting it in a later action").

[5] We agree with the approach adopted by a number of states and federal courts declining to apply claim preclusion to permissive cross-claims not asserted in a prior action. Part of the rationale for such an approach is that the contrary rule would, in essence, render otherwise "permissive" cross-claims "mandatory." See *Houlihan, supra*. Thus, because a contrary rule would effectively abolish the permissive cross-claim rule embodied in § 6-1113(g), we conclude that claim preclusion does not apply to permissive cross-claims that could have been raised in a former action but were not. Therefore, claim preclusion does not bar Shriner's legal malpractice action.

### (b) Collateral Estoppel or Issue Preclusion

[6] The doctrine of collateral estoppel, now called issue preclusion, bars relitigation of a finally determined issue that a party had a prior opportunity to fully and fairly litigate. *Hara v. Reichert*, 287 Neb. 577, 843 N.W.2d 812 (2014). Issue preclusion applies where (1) an identical issue was decided in a prior action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. *Id*. Issue preclusion applies only to issues actually litigated. *Id*.

The only pertinent issues actually litigated in the underlying personal injury and interpleader actions were (1) the enforceability of the settlement agreement among Shriner, Svoboda, and Cloudburst and (2) the enforceability of Friedman's attorney's lien against a portion of the settlement proceeds. Because Shriner was a party to the personal injury and interpleader actions and had the opportunity to fully and fairly litigate these two issues, the doctrine of issue preclusion bars her from

- 885 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
SHRINER v. FRIEDMAN LAW OFFICES
Cite as 23 Neb. App. 869

relitigating them. Thus, Shriner cannot now argue that the settlement agreement reached in the mediation was unenforceable or that Friedman was not entitled to the attorney fees received as part of the judgment in the interpleader action.

[7] Otherwise, however, the issues Shriner raises in her legal malpractice claims were not litigated in either the personal injury action or the interpleader action. In a civil action for legal malpractice, a plaintiff alleging professional negligence on the part of an attorney must prove three elements: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) that such negligence resulted in and was the proximate cause of loss to the client. *Gallner v. Larson*, 291 Neb. 205, 865 N.W.2d 95 (2015). With the possible exception of Friedman's employment as Shriner's attorney, which is undisputed, the district court in the underlying actions was not called upon to address any of these issues.

Friedman's reliance on *Woodward v. Andersen*, 261 Neb. 980, 627 N.W.2d 742 (2001), is misplaced. In *Woodward*, during a prior divorce proceeding, a husband and wife entered into a property settlement agreement that, among other things, distributed the shares in a closely held corporation between the parties. The parties also executed a shareholder agreement, which was incorporated into the divorce decree, providing that the wife was not indebted to the corporation and that the corporation had no claims against her. After the divorce decree became final, the husband sued his former wife for an accounting, a return of funds to the corporation, and dissolution of the corporation. The district court determined that res judicata or collateral estoppel barred the husband from asserting claims based on actions taken by the wife prior to the divorce, and the Nebraska Supreme Court affirmed. *Id*.

Relying on the doctrine of collateral estoppel, the Nebraska Supreme Court reasoned that the corporation had been marital property and that "[in] order to equitably distribute the property, a necessary determination involved the value of the corporation." *Id*. at 988, 627 N.W.2d at 749. The court

- 886 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
SHRINER v. FRIEDMAN LAW OFFICES
Cite as 23 Neb. App. 869

reasoned that "[a]ny claim that [the husband] or the corporation had against [the wife] at the time of the divorce would affect the valuation of the corporation, bringing directly into issue whether [the wife] improperly withdrew money from the corporation." *Id*. at 988, 627 N.W.2d at 749-50. Based on this reasoning, the court concluded the husband was collaterally estopped from relitigating issues concerning the wife's withdrawals from the corporation prior to the divorce. *Id*.

In the present case, no issue in the underlying personal injury or interpleader actions required the court to address, as a "necessary determination," the issues material to Shriner's legal malpractice action. See *id.* at 988, 627 N.W.2d at 749. Therefore, the doctrine of issue preclusion does not apply to Shriner's legal malpractice action, with the exception of the two issues noted above: (1) the enforceability of the settlement agreement in the personal injury action and (2) Friedman's entitlement to the fees obtained as part of the judgment in the interpleader action.

We must clarify, however, that simply because Shriner is precluded from relitigating the enforceability of the settlement agreement, it does not mean she is precluded from arguing Friedman breached the standard of care for an attorney by advising her to accept, or by pressuring her into accepting, the $45,000 settlement offer. See *Wolski v. Wandel*, 275 Neb. 266, 271, 746 N.W.2d 143, 148-49 (2008) ("[a] client who has agreed to the settlement of an action is not barred from recovering against his or her attorney for malpractice if the client can establish that the settlement agreement was the product of the attorney's negligence").

### (c) Judicial Estoppel

[8] The doctrine of judicial estoppel prohibits one who has successfully and unequivocally asserted a position in a prior proceeding from asserting an inconsistent position in a subsequent proceeding. See *Burns v. Nielsen*, 273 Neb. 724, 732 N.W.2d 640 (2007). The intent behind the doctrine is to

- 887 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
SHRINER v. FRIEDMAN LAW OFFICES
Cite as 23 Neb. App. 869

prevent parties from gaining an advantage by taking one position in a proceeding and then switching to a different position when convenient in a later proceeding. *Cleaver-Brooks, Inc. v. Twin City Fire Ins. Co.*, 291 Neb. 278, 865 N.W.2d 105 (2015). For the doctrine to apply, the court in the prior proceeding must have accepted the inconsistent position; otherwise, no risk of inconsistent results exists. *Burns, supra*. The doctrine is to be applied with caution so as to avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement. *Cleaver-Brooks, Inc., supra*.

Friedman maintains that the doctrine of judicial estoppel applies because Shriner took positions in the underlying personal injury and interpleader actions that are inconsistent with the position she is taking in her legal malpractice action. Friedman identifies the prior inconsistent positions as follows: (1) Shriner offered no evidence in opposition to Svoboda and Cloudburst's motion to enforce the settlement agreement, (2) Shriner did not deny the allegations of the insurer's complaint in the interpleader action, (3) Shriner did not oppose the insurer's request for a broad release of it and its insureds from liability arising from the accident, and (4) Shriner stipulated to a disbursement of the settlement proceeds.

Friedman has not persuaded us that judicial estoppel applies under these circumstances. Regarding Shriner's failure to offer evidence in opposition to the motion to enforce the settlement agreement, we note that Shriner's attorney at the time requested an opportunity to present evidence but was discouraged by the district court from doing so. This conduct did not qualify as "successfully and unequivocally" asserting a position in a prior proceeding. See *Burns*, 273 Neb. at 734, 732 N.W.2d at 650. The same is true with respect to Shriner's failure to deny the insurer's allegations in the interpleader action and her failure to object to the insurer's request for a release of liability; a failure to object does not qualify as "successfully and unequivocally" asserting a position. See *id.* Accord

- 888 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
SHRINER v. FRIEDMAN LAW OFFICES
Cite as 23 Neb. App. 869

*Melcher v. Bank of Madison*, 248 Neb. 793, 539 N.W.2d 837 (1995) (declining to apply judicial estoppel to party's failure to object to his son's listing of tractor as one of his assets in prior bankruptcy proceeding).

Similarly, Shriner's stipulation to the disbursement of the settlement proceeds in the interpleader action does not warrant invoking judicial estoppel. In *Vowers & Sons, Inc. v. Strasheim*, 254 Neb. 506, 576 N.W.2d 817 (1998), the Nebraska Supreme Court held that judicial estoppel did not apply to a party who settled a negligence action against his former real estate broker and subsequently pursued an action against a buyer for breach of a contract to purchase real estate. Although the negligence action required the party to prove the unenforceability of the purchase contract, while the breach of contract action required the party to prove its enforceability, the Nebraska Supreme Court held that the settlement of the negligence action did not result in "judicial acceptance of the claim that [the real estate broker] was negligent . . . or that the court made any adjudication on the merits of such claim." *Id*. at 514, 576 N.W.2d at 824.

Like the settlement of the negligence action in *Vowers & Sons*, 254 Neb. at 514, 576 N.W.2d at 824, Shriner's agreement in the interpleader action as to how the settlement proceeds should be disbursed did not result in "judicial acceptance" of any position that is inconsistent with her position in the present action. In approving the agreement in the interpleader action, the district court for Hall County simply found it was not unconscionable; the court did not make any finding regarding the quality of Friedman's representation of Shriner in the personal injury action. Thus, judicial estoppel does not bar Shriner's legal malpractice action.

### (d) Equitable Estoppel

[9] The elements of equitable estoppel are, as to the party estopped, (1) conduct which amounts to a false representation or concealment of material facts, or at least which is calculated

- 889 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
SHRINER v. FRIEDMAN LAW OFFICES
Cite as 23 Neb. App. 869

to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. *Farmington Woods Homeowners Assn. v. Wolf*, 284 Neb. 280, 817 N.W.2d 758 (2012).

[10] As to the other party, the elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his or her injury, detriment, or prejudice. *Id*.

In support of Friedman's position that equitable estoppel applies to Shriner's legal malpractice action, Friedman contends Shriner's "silence" in the underlying personal injury and interpleader actions "precluded [Friedman] from having a chance to address [Shriner's] claims at a times [sic] they were ripe." Brief for appellees at 35. Friedman contends:

> If Shriner had testified that she had not voluntarily accepted the settlement offer, claimed that Friedman settled her claims without her valid authority, claimed that Friedman pressured, forced, or coerced her into settling her claims, claimed that [Friedman] had committed professional negligence, breach of contract, or fraud, or claimed that [Friedman] had otherwise acted improperly in any way, then [Friedman] would have vigorously disputed such claims in the Interpleader Action.

*Id*. at 36. Friedman claims prejudice insofar as Friedman is "now forced to defend this professional malpractice action in which Shriner is taking positions contrary to the positions she took" in the underlying actions. *Id*.

We disagree that equitable estoppel applies under these circumstances. With regard to Shriner's failure to present evidence at the hearing on the motion to enforce the settlement

- 890 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
SHRINER v. FRIEDMAN LAW OFFICES
Cite as 23 Neb. App. 869

agreement in the personal injury action, we noted above that the district court discouraged Shriner from doing so. Regardless, moments before the hearing on the motion to enforce the settlement agreement, Shriner testified at the hearing on Friedman's motion to withdraw as her attorney. Shriner testified that during the mediation, she "told . . . Friedman, in anger, that if that's all [she] had to get, that's what [she]'d have to get. Because he was forcing [her] into taking the claim [sic]." Shriner further testified that Friedman told her "at least twice that he had to have extra money to go ahead and take [her case] to court." In response, Friedman argued that he sought to withdraw because he could not ethically present to the court Shriner's argument that "there wasn't a mediated settlement."

Given Shriner's testimony at the hearing on Friedman's motion to withdraw, and Friedman's reasons for withdrawing as Shriner's attorney, Friedman's claim now that he was unaware of Shriner's belief that he pressured or coerced her into settling the personal injury action is not persuasive. Thus, the requirement that the party claiming equitable estoppel lack knowledge of the true facts is not present.

With respect to Shriner's conduct in the interpleader action, as we discussed above, Shriner was not required to file a cross-claim against Friedman in that action. That Shriner chose not to file a cross-claim was not "a false representation or concealment of material facts." See *Farmington Woods Homeowners Assn. v. Wolf*, 284 Neb. 280, 287, 817 N.W.2d 758, 766 (2012). In addition, that Friedman must defend against the present legal malpractice action instead of defending against a cross-claim in the interpleader action does not qualify as a change of position to Friedman's injury, detriment, or prejudice.

### (e) Conclusion as to Summary Judgment in Friedman's Favor

Because we have determined that Shriner's legal malpractice action is not barred under the doctrines of claim preclusion,

- 891 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
SHRINER v. FRIEDMAN LAW OFFICES
Cite as 23 Neb. App. 869

issue preclusion, judicial estoppel, or equitable estoppel, we conclude that summary judgment in Friedman's favor was improper. We reverse the district court's judgment insofar as it granted Friedman's motion for summary judgment.

We note Friedman further argues that summary judgment in Friedman's favor was proper because (1) Nebraska law prohibits a legal malpractice plaintiff from maintaining separate claims for breach of contract, breach of implied contract, and fraud; (2) the existence of an express contract bars Shriner's claim for breach of implied contract; and (3) Shriner failed to present any evidence to support her fraud claim. However, the record before us does not reflect that Friedman raised any of these issues before the district court, so we decline to address them. See *First Express Servs. Group v. Easter*, 286 Neb. 912, 923, 840 N.W.2d 465, 473 (2013) ("[w]hen a party raises an issue for the first time on appeal, we will disregard it because a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition").

## 2. SHRINER'S MOTION FOR SUMMARY JUDGMENT

[11] Although the denial of a motion for summary judgment, standing alone, is not a final, appealable order, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct such further proceedings as it deems just. *Vowers & Sons, Inc. v. Strasheim*, 254 Neb. 506, 576 N.W.2d 817 (1998). Thus, we have jurisdiction to review the judgment of the district court in its entirety. *Id.*

In Shriner's argument that the district court erred in not granting her motion for summary judgment, she contends the evidence shows "beyond any question of material fact" that Friedman breached the standard of care for an attorney.

- 892 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
SHRINER v. FRIEDMAN LAW OFFICES
Cite as 23 Neb. App. 869

Brief for appellant at 19. She identifies the breaches as (1) Friedman's failure to adequately investigate her personal injury claim, (2) Friedman's negligence in advising her to accept the inadequate settlement offer without properly advising her of the alternatives, (3) Friedman's execution of the unethical fee-sharing agreement with Sokolove and Underhill, and (4) Friedman's coercion of Shriner into accepting the settlement offer. Shriner further contends Friedman's refusal to continue advancing litigation costs constituted a breach of contract, a breach of implied contract, or a fraudulent misrepresentation.

We need not engage in a detailed recitation of the evidence to reject Shriner's contention that she is entitled to summary judgment on these issues. Each of the issues is a factual one on which the parties presented conflicting expert opinions. See *Guinn v. Murray*, 286 Neb. 584, 608-09, 837 N.W.2d 805, 824 (2013) ("the question of what an attorney's specific conduct should be in a particular case and whether an attorney's conduct fell below that specific standard is a question of fact"). Generally, a conflict of expert testimony regarding an issue of fact establishes a genuine issue of material fact which precludes summary judgment. *Guinn, supra*.

We need only briefly summarize the experts' affidavits to establish the existence of a genuine issue of material fact. In support of her motion for summary judgment, Shriner submitted Warner's affidavit in which he opined that Friedman breached the applicable standard of care by failing to properly value Shriner's claim, failing to conduct adequate discovery and investigation, demanding that Shriner pay the costs of litigation if she rejected the settlement offer, failing to advise Shriner of a potential conflict of interest, and advising her to accept the settlement offer "seemingly because he had not appropriately prepared her case for trial."

In opposition to Shriner's motion for summary judgment, Friedman submitted the affidavits of Neary and Mullin, both of whom opined that Friedman did not breach the applicable

- 893 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
SHRINER v. FRIEDMAN LAW OFFICES
Cite as 23 Neb. App. 869

standard of care. In Mullin's affidavit, he noted that Shriner executed a joint representation agreement acknowledging the involvement of all three law firms and the cost-sharing arrangement among them; that in the retainer agreement Shriner executed with Friedman, she agreed to "'pay all necessary costs and expenses incident'" to Friedman's representation of her; and that at the time of the mediation, there were a number of weaknesses in Shriner's personal injury suit, including her preexisting injuries from a prior car accident and an independent medical examiner's inability to make objective findings to substantiate her complaints of pain. In Neary's affidavit, she opined that Friedman properly disclosed the fee-sharing arrangement to Shriner, properly investigated Shriner's personal injury claim, properly advised Shriner during the mediation, and reasonably and appropriately decided to cease advancing litigation costs following the mediation.

In light of the conflicting expert opinions on the material issues raised in Shriner's legal malpractice action, we conclude the district court properly denied Shriner's motion for summary judgment. Accordingly, we affirm the district court's judgment insofar as it denied Shriner's motion.

### 3. Application of Mediation Communications Privilege

Although we have determined that summary judgment was not proper and this cause must be remanded for further proceedings, we next address the applicability of the mediation communications privilege, because the issue is likely to arise on remand. See *Combined Insurance v. Shurter*, 258 Neb. 958, 607 N.W.2d 492 (2000). Shriner contends the testimony of mediator Miller was privileged pursuant to § 25-2933 because it recounted mediation communications.

The Uniform Mediation Act, Neb. Rev. Stat. § 25-2930 et seq. (Reissue 2008), establishes a privilege for mediation communications, which generally are not subject to discovery

- 894 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
SHRINER v. FRIEDMAN LAW OFFICES
Cite as 23 Neb. App. 869

or admissible in evidence in a proceeding. See § 25-2933. Under the act, mediation communications are privileged unless an exception applies, § 25-2935; the privilege is waived, § 25-2934(a); or a person is precluded from asserting the privilege, § 25-2934(b) or (c). Shriner and Friedman do not dispute that Miller's deposition testimony recounted "[m]ediation communication[s]" as defined by the act, see § 25-2931(2), or that this action qualifies as a "[p]roceeding" as defined by the act, see § 25-2931(7). Likewise, there is no dispute that Shriner, as a mediation party, is permitted to prevent any other person from disclosing a mediation communication. See § 25-2933(b)(1).

In response to Shriner's contention that Miller's testimony is privileged, Friedman argues the testimony falls within the exception contained in § 25-2935(a), which provides:

> There is no privilege under section 25-2933 for a mediation communication that is:
>
> . . . .
>
> (6) except as otherwise provided in subsection (c) of this section, sought or offered to prove or disprove a claim or complaint of professional misconduct or malpractice filed against a mediation party, nonparty participant, or representative of a party based on conduct occurring during a mediation[.]

Subsection (c) of § 25-2935 provides that "[a] mediator may not be compelled to provide evidence of a mediation communication referred to in subdivision (a)(6) . . . of this section." Shriner does not specifically address the applicability of the exception contained in § 25-2935(a)(6) in her reply brief.

We agree with Friedman that Miller's deposition testimony falls within the exception contained in § 25-2935(a)(6). In her amended complaint, Shriner alleged that during the mediation, Friedman advised her to accept the $45,000 settlement offer. She further alleged Friedman told her that if she did not accept the settlement offer, Friedman would no longer advance litigation costs for her case. According to Shriner, although

- 895 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
SHRINER v. FRIEDMAN LAW OFFICES
Cite as 23 Neb. App. 869

she was indigent and informed Friedman that she desired to take the case to trial, Friedman persisted, demanding that she either accept the offer or pay the costs necessary to proceed to trial. Shriner alleged that she "relented under the pressure and duress and 'told . . . Friedman, in anger, that if that's all [she] had to get, that's what [she]'d have to get.'" Based upon these allegations, Shriner alleged that Friedman breached the applicable standard of care by demanding that she pay litigation costs to proceed to trial and by advising her to accept the settlement offer.

Miller's deposition testimony consisted primarily of a description of his interaction with Shriner and Friedman during the mediation with respect to the $45,000 settlement offer. Miller observed that Shriner and Friedman were both disappointed with the offer. Miller recalled that Friedman advised Shriner "there was a real chance that they could get less than [$45,000] if they tried the case" and recalled that it was Friedman's opinion Shriner should accept the offer. Miller also recalled that Friedman told Shriner she would have to pay the costs of the physicians' depositions if she wished to proceed to trial. Miller testified that Shriner left the conference room and made a telephone call, then returned and said she would accept the offer. According to Miller, she was not happy but affirmatively agreed to accept the settlement offer.

[12] Miller's testimony is relevant to disproving "a claim or complaint of professional misconduct or malpractice filed against a . . . representative of a party based on conduct occurring during a mediation." See § 25-2935(a)(6). Specifically, Friedman seeks to use Miller's testimony to disprove Shriner's allegations that Friedman committed legal malpractice by coercing her into accepting the settlement offer and by improperly advising her during the mediation. Therefore, Miller's testimony falls within the exception contained in § 25-2935(a)(6). If Miller's testimony is offered on remand, caution will be required, since only the portion of a

- 896 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
SHRINER v. FRIEDMAN LAW OFFICES
Cite as 23 Neb. App. 869

mediation communication necessary for the application of the exception may be admitted. See § 25-2935(d).

Shriner further argues that Miller's testimony lacked foundation and was prejudicial. The applicability of these evidentiary objections will depend upon Miller's specific testimony on remand, so we decline to address them.

## VI. CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court for Lancaster County insofar as it entered summary judgment in Friedman's favor; we affirm the judgment insofar as it denied Shriner's motion for summary judgment; and we remand the cause for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.